IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES OF AMERICA          §
                                  §
v.                                §   CRIMINAL ACTION NO. H-17-221-01
                                  §
HECTOR LOPEZ PALACIOS             §

## MEMORANDUM OPINION AND ORDER

Defendant, Hector Lopez Palacios, is charged in a two-count indictment for being an illegal alien in possession of a firearm in violation of 18 U.S.C. § 922(g)(5) and § 924(a)(2), and for illegal reentry after having been deported subsequent to a felony conviction in violation of 8 U.S.C. § 1326(a) and (b)(1).[1] Pending before the court are defendant's Motion to Suppress Evidence (Docket Entry No. 17), Supplemental Motion to Suppress Evidence (Docket Entry No. 22), and Second Supplemental Motion to Suppress Evidence (Docket Entry No. 25). On May 24, 2017, the court held a hearing on the defendant's motion and supplemental motion to suppress. The government presented one witness, Officer Jesus Medina, and both parties presented oral arguments. At the end of the hearing the court took the two motions under advisement and gave the parties until May 26, 2017, to submit supplemental briefing. For the reasons stated below defendant's motion,

---

[1]Indictment, Docket Entry No. 1.

supplemental motion, and second supplemental motion to suppress evidence will be denied.

## I. Factual Background

On February 27, 2017, defendant was arrested at 4005 Hollister, Houston, Texas 77055. Glenn Miller, a private citizen, detained defendant by placing him in handcuffs and holding him for Houston Police Department ("HPD") officers after hearing gunshots and seeing the defendant discharge a weapon into the air. Miller placed the firearm out of the defendant's reach until HPD officers arrived. When HPD officers R. Munoz and A. Baker arrived they recovered and inventoried the defendant's wallet, which contained an expired driver's license and a Mexican passport. Officers Munoz and Baker arrested the defendant for being a felon in possession of a weapon. Neither Officer Munoz nor Officer Baker gave the defendant warnings required by Miranda v. Arizona, 86 S. Ct. 1602 (1966).

During the booking process at the Harris County Detention Center, the defendant was interviewed by Enforcement and Removal Operations ("E.R.O.") Officer Jesus Medina ("Medina"). Officer Medina did not give the defendant Miranda warnings. Officer Medina interviewed the defendant in Spanish by asking the defendant questions about his identity and immigration status needed to complete United States Immigration and Customs Enforcement Form I-213, Record of Deportable/Inadmissible Alien. Defendant

-2-

told Medina that he was born in Mexico, he is a citizen of Mexico, he has not served in the United States military, he has previously been deported, did not fear returning to Mexico, and did not want his consulate notified.

## II.  Analysis

Defendant's motion to suppress seeks to suppress

> [a]ll incriminating evidence including the .357 Smith and Wesson pistol, spent cartridges, and unused round; passport, statements by Mr. PALACIOS LOPEZ to Houston Police Officers as well as all evidence obtained by Deportation Officer Jesus Medina including any written material, reports, or summaries . . . .[2]

Defendant's Supplemental Motion to Suppress Evidence states that the defendant "seeks to suppress all statements made to . . . Office[r] Jesus Medina . . . [and] any written material, reports, or summaries created by . . . Officer Jesus Medina as a result of the interview with . . . Officer Jesus Medina."[3]  At the May 24, 2017, hearing, defense counsel stated that because defendant did not make any statements to the arresting HPD officers, and because counsel could find no law supporting defendant's request to suppress physical evidence recovered at the scene of his arrest (i.e., the pistol, spent cartridges, unused round, and passport), the defendant was now seeking to suppress only statements made to Medina and any reports or materials derived from those statements.

---

[2]Motion to Suppress Evidence, Docket Entry No. 17, p. 3.

[3]Supplemental Motion to Suppress Evidence, Docket Entry No. 22, p. 3.

-3-

Defendant argues that the court should grant his motions to suppress because

> the initial *Miranda* violation by Houston Police Officers justifies the suppression of all incriminating evidence. Additionally, Mr. PALACIOS LOPEZ was deprived of the *Miranda* warnings a second time when interviewed by the deportation officer. . . The *Miranda* violation also contravenes the *Fourth, Fifth,* and *Fourteenth Amendments* to the *U.S. CONST. amends IV, V, XIV, Miranda.*[4]

Defendant argues that his statements to Medina should be suppressed because "any statements to . . . Medina were not voluntary,"[5] and alienage is an element of the offenses with which he is charged.[6]

The government does not contest that Medina questioned the defendant while he was in custody without providing him Miranda warnings. Asserting that Medina merely questioned the defendant to determine if an immigration detainer was required and not to investigate the defendant for the criminal activity with which he was eventually charged, the government argues that exceptions to Miranda support the denial of the defendant's motions to suppress.

Citing Pennsylvania v. Muniz, 110 S. Ct. 2638 (1990), the government argues that Officer Medina's questions fall within the "routine booking question" exception that exempts from Miranda's coverage questions to secure the "'biographical data necessary to

---

[4]Motion to Suppress Evidence, Docket Entry No. 17, p. 3. See also Supplemental Motion to Suppress Evidence, Docket Entry No. 22.

[5]Supplemental Motion to Suppress Evidence, Docket Entry No. 22, p. 1.

[6]Id.

complete booking or pretrial services.'"[7]  Citing Immigration and

Naturalization Service v. Lopez-Mendoza, 104 S. Ct. 3479, 3483-84

(1984), and United States v. Hernandez-Mandujano, 721 F.3d 345, 351

(5th Cir. 2013), the government argues that "[c]ase precedent

forecloses any argument that Defendant's identity and A-file are

suppressible. . ."[8]  The government also argues that "the discovery

of [defendant's] wallet and passport during inventory of his person

[subsequent to his] arrest was a lawful method to determine the

identity of a defendant in custody."[9]  Finally, citing Nix v.

Williams, 104 S. Ct. 2501, 2508-09 (1984), the government argues

that the defendant's statements to Medina are not subject to

suppression because "any information discovered by . . . Medina

would have been discovered alternatively, due to the information he

had independent of the Defendant's statements. . ."[10]

## A.    Applicable Law

In Miranda, 86 S. Ct. at 1612, the Supreme Court held that

> the prosecution may not use statements, whether
> exculpatory or inculpatory, stemming from custodial
> interrogation of the defendant unless it demonstrates the
> use of procedural safeguards effective to secure the

---

[7]Government's Response to Defendant's Motion to Suppress
Evidence, Docket Entry No. 21, p. 3 (quoting Muniz, 110 S. Ct. at
2650).

[8]Id. at 3.

[9]Id.

[10]Government's Supplemental Response to Defendant's Motion to
Suppress Evidence, Docket Entry No. 24, p. 1.

privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.

The Court explained that

[p]rior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of any attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently.

Id. The Court reasoned that the coercion inherent in custodial interrogation blurs the line between voluntary and involuntary statements, and thus heightens the risk that an individual will not be accorded his privilege under the Fifth Amendment not to be compelled to incriminate himself. Id. at 1609.

In determining whether a suspect is in custody, the relevant inquiry is "how a reasonable man in the suspect's position would have understood his situation." Berkemer v. McCarty, 104 S. Ct. 3138, 3151 (1984). In Rhode Island v. Innis, 100 S. Ct. 1682 (1980), the Court explained that interrogation can take the form of "express questioning" or its "functional equivalent," which includes "words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Id. at 1689-90.

The Court has since identified certain types of questions normally attendant to arrest and custody that are not subject to

the should-have-known test. For example, in Muniz, 110 S. Ct. at

2650, a four-justice plurality recognized a "routine booking

question exception" to Miranda that "exempts from *Miranda's*

coverage questions to secure the biographical data necessary to

complete booking or pretrial services." Justice Brennan writing

for the plurality explained that questions that are asked "for

record-keeping purposes only" and are "reasonably related to the

police's administrative concerns . . . fall outside the protections

of *Miranda*." Id. In Muniz the Court held that questioning the

defendant about his "name, address, height, weight, eye color, date

of birth, and current age" was exempt from Miranda because these

questions were "reasonably related to the police's administrative

concerns." Id. Federal courts — including the Fifth Circuit —

have uniformly recognized Muniz as establishing a routine booking

question exception. See Presley v. City of Benbrook, 4 F.3d 405,

408 & n.8 (5th Cir. 1993) ("In the wake of *Muniz*, it has been

universally accepted by courts, both federal and state, that a

routine booking question exception to the Fifth Amendment

exists."). See also United States v. Dougall, 919 F.2d 932, 935

(5th Cir. 1990) ("biographical questions — name, birth information,

address, height, weight — asked here are part of the booking

routine, not intended to elicit damaging statements, and thus not

interrogation for fifth amendment purposes"); Maryland v. King, 133

S. Ct. 1958, 1975 (2013) ("And though the Fifth Amendment's

protection against self-incrimination is not, as a general rule,

governed by a reasonableness standard, the Court has held that 'questions . . . reasonably related to the police's administrative concerns . . . fall outside the protections of *Miranda* . . . and the answers thereto need not be suppressed.' . . . *Muniz*, . . . 110 S. Ct. [at 2650].").

## B. Application of the Law to the Facts

### 1. Medina's Inquiries Are Subject to the Routine Booking Question Exception to *Miranda*

Asserting that the questions Medina posed to the defendant were merely routine, biographical booking questions, the government argues that the defendant's statements should not be suppressed because the questions Medina asked were reasonably related to record-keeping and administrative needs and did not implicate Miranda because they were not designed to elicit incriminating admissions. Citing United States v. Rodriguez, 356 F.3d 254 (2d Cir. 2004), and United States v. Bogle, 114 F.3d 1271 (D.C. Cir.), cert. denied, 118 S. Ct. 350 (1997), the government argues that "[s]ome jurisdictions have held that even if some of the questions asked in this immigration questioning are incriminating, it can be deemed to not be in reference to a custodial interrogation."[11] In Rodriguez, 356 F.3d at 259, the Second Circuit held that no Miranda warning was required where the agent's interview of defendant "was conducted solely for the purpose of determining whether Rodriguez

_____

[11]Government's Response to Defendant's Motion to Suppress Evidence, Docket Entry No. 21, p. 4.

would be subject to administrative deportation after his release,"
and "[t]here [wa]s nothing in the record to indicate that [the
a]gent . . . knew or should have known that evidence for an
eventual prosecution would emerge from his administrative interview
of Rodriguez." In Bogle, 114 F.3d at 1275, the court rejected an
argument similar to that urged by the defendant in this case,
stating:

> even in cases involving express questioning, there is no
> interrogation triggering the protections of *Miranda*
> unless, in the totality of the circumstances, the
> officer's questions were "reasonably likely to elicit an
> incriminating response." (Citations omitted.)

> We agree with these circuits that only questions that are
> reasonably likely to elicit incriminating information in
> the specific circumstances of the case constitute
> interrogation within the protections of *Miranda*. As the
> Supreme Court explained in Innis, "'Interrogation,' as
> conceptualized in the Miranda opinion, must reflect a
> measure of compulsion above and beyond that inherent in
> custody itself." . . . 100 S. Ct. at 1689. A question
> that is not likely to elicit an incriminating response is
> not inherently coercive and therefore should not trigger
> the protections of Miranda.

As evidence that his questions were not intended to elicit
incriminating admissions, Medina testified at the May 24, 2017,
hearing that he interviewed the defendant solely for the purpose of
completing Form I-213 to determine if an immigration detainer
should be placed upon the defendant. See United States v. Doe,
Criminal No. 12-0052, 2012 WL 5364269, *3 (W.D. La. October 1,
2012) ("The I-213 Form contains basic booking information
concerning an alien, and documents [the agent's] interaction with
[the alien]."). In order to complete Form I-213, Medina asked the

defendant his place of birth, place of citizenship, and alien status, in addition to other biographical information. Medina testified that he had not been present at the time of defendant's arrest, was not involved in the criminal investigation concerning the defendant, and was not involved in deciding whether the defendant would be prosecuted. Moreover, the defendant's arrest was based upon his possession of a firearm and was not related to his immigration status.

While defendant argues that he should have been informed of his <u>Miranda</u> rights before Medina questioned him because his citizenship turned out to be an important issue in this case, the defendant does not challenge the government's contention that his contact with Medina consisted solely of a deportation interview for administrative purposes, and does not contradict the government's argument that Medina asked the defendant only routine, biographical booking questions. Nor does defendant contradict the government's evidence that Medina's questions were not designed or intended to elicit incriminating responses from defendant. As the government notes, other courts have applied the "routine booking question" exception to <u>Miranda</u> where, like here, the information sought from the defendant is primarily biographical and not intended to elicit incriminating responses. <u>See, e.g.</u>, <u>Rodriguez</u>, 356 F.3d at 259 (<u>Miranda</u> warnings were not improperly withheld because the questioning agent was unaware of the potentially incriminatory nature of the information requested); <u>United States v. Reyes</u>, 225

F.3d 71, 76-77 (1st Cir. 2000) (applying the routine booking question exception to case in which a law enforcement agent asked only those questions indicated on a standard DEA booking form, which made no reference to the offense for which the defendant had been arrested, and where the booking interview was conducted separately from any substantive interrogation); United States v. Salgado, 292 F.3d 1169, 1172-73 (9th Cir.), cert. denied, 123 S. Ct. 479 (2002) (finding an officer's inquiry into the defendant's birthplace, nationality, and citizenship not to be interrogation because the defendant's arrest was unrelated to his immigration status).

Because the defendant's statements to Medina were made in response to routine booking questions regarding his birthplace, citizenship, and alien status, they did not constitute an interrogation requiring a Miranda warning. Accordingly, the defendant's statements to Medina were obtained lawfully and will not be suppressed because of the agent's failure to admonish the defendant of his Miranda rights.

Even assuming that the statements defendant made to Medina were made in the course of a custodial interrogation and were incriminating, Fifth Circuit precedent establishes that evidence of identity is not suppressible. See United States v. Hernandez-Mandujano, 721 F.3d 345, 351 (5th Cir. 2013) (per curiam) (citing I.N.S. v. Lopez-Mendoza, 104 S. Ct. 3479 (1984) (holding

that the exclusionary rule does not apply in civil deportation proceedings)). In <u>Hernandez-Mandujano</u> the Fifth Circuit held that a driver's admission to border patrol agents that he was a citizen of Mexico unlawfully present in the Untied States was not subject to suppression even though the agents lacked reasonable suspicion of illegal activity when they stopped him. <u>Id.</u> Although in a special concurrence, Judge Jolly expressed reservations about the Fifth Circuit's application of <u>Lopez-Mendoza</u> and noted that other circuits allow suppression of identity evidence under certain circumstances, he acknowledged that the panel was duty bound to apply the law as it currently exists in this Circuit. <u>Id.</u> at 351 (citing <u>United States v. Roque-Villanueva</u>, 175 F.3d 345, 346 (5th Cir. 1999), for summarily concluding "that no evidence pertaining to an illegal alien's identity is suppressible, predicating this finding upon a statement by the Supreme Court in *Lopez-Mendoza* that '[t]he "body" or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred.'").

  2.    <u>Independent Source Exeption</u>

Alternatively, the government argues that the defendant's statements to Medina should be admitted under the independent source doctrine and because Medina conducted only an administrative deportation interview with the defendant — for which <u>Miranda</u>

-12-

warnings are not required. The independent source doctrine holds that if evidence is derived from a source independent of illegally obtained evidence, it can properly be admitted into evidence. United States v. Brookins, 614 F.2d 1037, 1041-42 (5th Cir. 1980). Because, as discussed above, the court finds that the defendant's statements to Medina are subject to the routine booking question exception there is no need to address the independent source exception.

3.    Inevitable Discovery Exception

Finally, citing Nix v. Williams, 104 S. Ct. 2501, 2508-09 (1984), the government argues that defendant's statements regarding his alienage need not be suppressed because they are admissible under the inevitable discovery exception.[12]    In Nix the Supreme Court recognized the inevitable discovery exception to the exclusionary rule. This exception applies when evidence obtained unlawfully would have been inevitably discovered through independent, lawful means. Id. Because the core rationale of the exclusionary rule is to deter police misconduct, the prosecution must not be put in a better position as a result of police illegality. Id. The inevitable discovery exception is designed to ensure that the prosecution is not put in a worse position simply because of police misconduct. Id. at 2509 (emphasis in original).

_____

[12]Government's Supplemental Response to Defendant's Motion to Suppress Evidence, Docket Entry No. 24.

The rationale for the inevitable discovery exception is akin to that for the independent source doctrine: "*Since* the tainted evidence would be admissible if in fact discovered through an independent source, it should be admissible if it inevitably would have been discovered." Murray v. United States, 108 S. Ct. 2529, 2534 (1988). For the "inevitable discovery" exception to apply, the government must prove by a preponderance of the evidence (1) that there is a reasonable probability that the evidence in question would have been discovered by lawful means but for the police misconduct and (2) that the government was actively pursuing a substantial alternative line of investigation. United States v. Lamas, 930 F.2d 1099, 1101 (5th Cir. 1991) (citing United States v. Cherry, 759 F.2d 1196, 1205-1206 (5th Cir. 1985)). See also Murray, 108 S. Ct. at 2534 ("The inevitable discovery doctrine, with its distinct requirements, is in reality an extrapolation from the independent source doctrine: *Since* the tainted evidence would be admissible if in fact discovered through an independent source, it should be admissible if it inevitably would have been discovered."); United States v. Singh, 261 F.3d 530, 535 (5th Cir. 2001) ("The exclusionary rule is intended to put the police the same position — not a worse position — than they would have been in if the misconduct had not occurred.").

Because the court has already concluded that the defendant's statements to Medina are subject to the routine booking question

exception to <u>Miranda</u>, there is no need to apply the inevitable discovery exception. However, had the defendant's statements been obtained in violation of his <u>Miranda</u> or other rights, the court agrees that the inevitable discovery exception would apply.

Medina testified at the May 24, 2017, hearing that he was able to access three different databases that allowed him to use the defendant's fingerprints, name, and date of birth to access information capable of answering the Form I-213 questions that he asked and the defendant answered. Had the defendant not admitted to Medina that he was an illegal alien, as a routine practice Medina would have obtained the defendant's name and birth date from the driver's license and Mexican passport recovered from the defendant by the arresting HPD officers, and Medina would have obtained the defendant's fingerprints as an incident of his arrest. From this information Medina would have obtained from databases the information that defendant seeks to suppress. <u>See</u> <u>King</u>, 133 S. Ct. at 1972 (justifying booking exception that allows police to obtain fingerprints and DNA without a warrant while booking an arrestee at the police station, as the administrative need for identification). Because Medina would inevitably have discovered the defendant's status as an illegal alien lawfully and independently of any questioning by Medina by checking his name, birth date, and fingerprints in databases maintained by law enforcement, the inevitable discovery doctrine provides an additional basis for denying the defendant's motions to suppress.

## III. Conclusions and Order

For the reasons stated above, defendant's Motion to Suppress Evidence (Docket Entry No. 17) is **DENIED**; defendant's Supplemental Motion to Suppress Evidence (Docket Entry No. 22) is **DENIED**; and defendant's Second Supplemental Motion to Suppress Evidence (Docket Entry No. 25) is **DENIED**.

**SIGNED** at Houston, Texas, on this the 31st day of May, 2017.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE